UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILLAGE COMMUNITIES, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; BOARD OF SUPERVISORS OF COUNTY OF SAN DIEGO; and DOES 1–20,<br><br>Defendants. | Case No.: 20-cv-01896-AJB-DEB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**(Doc. Nos. 36 & 37)** |

Presently pending before the Court is (1) Defendants Board of Supervisors of San Diego (the "Board") and County of San Diego's (the "County") (collectively, "Defendants") Motion for Summary Judgment, (Doc. No. 36), and (2) Plaintiffs' Motion for Partial Summary Judgment, (Doc. No. 37). The motions have been fully briefed. (Doc. Nos. 40–43.) The Court thereafter ordered supplemental briefing on one issue as discussed below. (Doc. No. 52.) Defendants filed their supplemental brief on June 17, 2022, (Doc. No. 53), and Plaintiffs responded on June 24, 2022, (Doc. No. 54). For the reasons set forth

below, the Court **DENIES** Plaintiffs' motion for partial summary judgment and **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment.

## I. BACKGROUND

In 2010, the County granted then-applicant Accretive Investments a "Plan Amendment Authorization" for the Lilac Hills Ranch planned community (the "Project") on 608 acres of land in unincorporated North San Diego County, California (the "Property"). (Doc. No. 37-1 at 10.) In 2012, Accretive submitted its development application to the County, and the Project underwent environmental and public review between May 2012 and 2015. (*Id.*) In September 2015, the San Diego County Planning Commission voted to recommend Environmental Impact Review certification and project approval to the Board, subject to modifications. (*Id.* at 11.) However, later that year, the California Supreme Court issued a decision affecting the 2015 Project's greenhouse gas emissions analysis, which paused movement on the project. (*Id.*)

In 2016, Accretive placed a modified version of the 2015 Project on the ballot as a voter initiative, but it was rejected by 64% of county voters. (*Id.*; Doc. No. 36-1 at 5.) In 2017, Village Communities overtook the Project and resumed processing the application. (Doc. No. 37-1 at 12.) After acquiring the Property, Village Communities revised the proposed project, working with the County's Planning Commission staff to address various concerns. (*Id.*) Nonetheless, on June 20, 2020, the Board formally voted to deny the project, and Plaintiffs filed suit. (*Id.* at 26.)

This case ultimately concerns wildfire safety, as the Property sought to be developed is in a high-risk area for such disasters. Plaintiffs assert that through its work with Planning Commission staff, it revised the Project to mitigate the risk down to acceptable levels consistent with the County's General Plan, a master zoning document that governs all future development within the County's boundaries. Despite these revisions, Plaintiffs allege Defendants denied the permit only after Village Communities refused to meet an alleged unconstitutional condition—namely, acquiring "fuel modification easements" from fifty adjacent landowners.

A fuel modification easement grants the easement holder the right to enter property and control vegetation on the portion of the property subject to the easement. In the context of wildfires, the permitted entry typically involves destroying and removing vegetation that serves as "fuel" for fires, which can help stop a fire's spread across a roadway. Here, the main road leading to and from the Project site is a two-lane road called West Lilac Road, which is surrounded to the north and east by an area called Keys Canyon that is characterized by large, dense, flammable brush. (Doc. No. 36-1 at 9.) Particularly of concern, the County Fire Authority ("County Fire") found that the addition of over 3,000 cars from the Project residents, plus additional vehicles from people traveling to and from the Project, would cause substantial traffic congestion on West Lilac during a wildfire evacuation, presenting a risk of people becoming entrapped in their vehicles during an evacuation. (*Id.* at 10.) Thus, Defendants allegedly required Village Communities to obtain these easements from the individual property owners as a condition for approving the development.

Plaintiffs contend Defendants unconstitutionally required Plaintiffs to obtain the easements because (1) the County already had the legal authority the easements supposedly convey, (2) other similar projects have not been subject to the same requirement, and (3) Defendants' actions were arbitrary and capricious. Plaintiffs assert four claims for relief, each alleging violations of 42 U.S.C § 1983.

## II.    LEGAL STANDARD

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

Where cross-motions for summary judgment are at issue, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal quotation marks omitted). That said, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, No. 11–09068, 2013 WL 1010547, at *4 (C.D. Cal. Mar. 13, 2013) ("Conclusory, speculative testimony in affidavits

and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. REQUESTS FOR JUDICIAL NOTICE

To begin, Defendants request judicial notice of five exhibits as part of their motion, (Doc. No. 36-2), and two exhibits in their reply in support of their motion, (Doc. No. 42-1). Under Federal Rule of Evidence 201, the court "may judicially notice a fact that is not subject to reasonable dispute" for the following two reasons: (1) "it is generally known within the trial court's territorial jurisdiction," or (2) it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### A.  Defendants' Request for Judicial Notice: Exhibits 1–5

First, Defendants ask the Court to take judicial notice of (1) County of San Diego Resolution No. 17-001, dated January 10, 2017; (2) Statement of Proceedings for the June 24, 2020 County of San Diego Board of Supervisors Regular Meeting Planning and Land Use Matters; (3) Minute Order No. 3 for the County of San Diego Board of Supervisors Meeting of June 24, 2020; (4) County Board of Supervisors Resolution No. 20-078, dated June 24, 2020; and (5) Letter from Deputy Chief Administrative Office Sarah E. Aghassi to the San Diego County Board of Supervisors for its June 24, 2020 meeting. (Doc. No. 36-2 at 2; *see also* Doc. No. 40-2.) Plaintiffs did not oppose this request or dispute the authenticity of these documents. (*See generally* Doc. No. 41.)

Courts routinely grant judicial notice of public records. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"). Accordingly, Defendants' request for judicial notice of Exhibits 1–5 is **GRANTED**.

///

### B.   Defendants' Request for Judicial Notice: Exhibits 34 & 39

Next, attached to Defendants' reply brief are additional requests for judicial notice of (1) portions of the Statement of Proceedings for the July 8, 2020 County of San Diego Board of Supervisors Regular Meeting Planning and Land Use Matters, and (2) California Fire Code § 1010.1.9. (Doc. No. 42-1 at 2.) The Court finds these two documents irrelevant to the present matter. Thus, at this stage of the proceedings, as the two exhibits are irrelevant to any controversy the Court must resolve and the documents cannot be incorporated by reference, judicial notice of Exhibits 34 and 39 is **DENIED**. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1026 (C.D. Cal. 2015) (declining to take judicial notice of several exhibits finding they were irrelevant to the matter).

### IV.   EVIDENTIARY OBJECTIONS

Defendants lodge a separate statement of evidentiary objections to Plaintiffs' evidence submitted in support of Plaintiffs' motion for summary judgment. (Doc. No. 40-1.) However, Defendants' objections do not comply with the Civil Case Procedures of the Honorable Anthony J. Battaglia, U.S. District Judge, which requires objections relating to the motion to be set forth in the parties' opposition or reply. J. Battaglia Civ. Case Proc. § II.A. As such, the Court does not consider Defendants' objections.

### V.   DISCUSSION

Plaintiffs' four claims allege violations of 42 U.S.C. § 1983, which prohibits state actors from depriving a plaintiff of the "rights, privileges or immunities secured by the Constitution." To prevail on a Section 1983 claim, a plaintiff must show that "(1) acts by the defendants (2) under color of state law (3) depriv[ed] [it] of federal rights, privileges or immunities [and] (4) caus[ed] [it] damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)) (internal quotation marks omitted). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Id.* (internal quotation marks omitted).

///

Defendants move for summary judgment on each of Plaintiffs' four claims for (1) inverse condemnation, (2) temporary taking, (3) equal protection violations, and (4) substantive due process violations. (Doc. No. 36.) Plaintiffs move for partial summary judgment to establish Defendants' liability under its four claims alleging violations of Section 1983. (Doc. No. 37.)  The Court will address each basis for summary judgment below.

### A. Plaintiffs' First and Second Takings Clause Claims

Plaintiffs' first and second claims, brought pursuant to Section 1983, allege violations of their rights under the Fifth Amendment's Takings Clause through (1) inverse condemnation and (2) a temporary taking, on the grounds that the County's request for offsite fuel modifications is an unconstitutional condition. (SAC ¶¶ 107–117.) Plaintiffs and Defendants both move for summary judgment on these claims. (Doc. Nos. 37-1 at 29–31, 36-1 at 14–25.) Specifically, Plaintiffs assert the County wrongfully conditioned the Project on the purchase of fifty fuel modification easements from off-site landowners, which would only come at a "substantial cost" to Plaintiffs. (Doc. No. 37-1 at 31.) Plaintiffs further contend the County did not need those easements because the County Consolidated Fire Code already provided the County and/or fire authority with the legal authorization to clear vegetation near the public roadway—the same authority the easement would provide. (*Id.*) Defendants counter that (1) the County needed to undertake legislative acts to amend its General Plan and zoning ordinance to approve the Project; (2) the Board denied the Project for additional reasons independent of the easement condition; (3) there is no unconstitutional taking because the County did not require Plaintiffs to give up property; and (4) there is no unconstitutional taking because the easement condition satisfies the test set out in *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595 (2013), under *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). (Doc. No. 36-1 at 14–25.)

///

///

### 1. Generally Applicable Legislation

As an initial matter, Defendants assert that because the County could not approve the Project without amending its General Plan or zoning ordinance, the County's decision was a legislative one which does not give rise to a taking. (Doc. No. 36-1 at 17.) Although Defendants again raise this argument in their supplemental briefing, it is outside the scope of what the Court previously ordered and thus will disregard this argument. (*See* Doc. No. 52.) The Court ultimately finds this argument unavailing.

In *Dolan*, the Supreme Court highlighted that the "the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel," instead of imposing an "essentially legislative determination[] classifying entire areas of the city . . . ." 512 U.S. at 385; *see also Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 546 (2005) ("Both *Nollan* and *Dolan* involved Fifth Amendment takings challenges to adjudicative land-use exactions."); *Better Housing for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 932 (C.D. Cal. 2020) (same). Courts recognize that "adjudicative" zoning decisions are typically *ad hoc*, characterized by the exercise of discretion by the city or administrative body. Legislative actions, on the other hand, are characterized by "generally applicable legislation . . . that [] applie[s], without discretion or discrimination," to every property within the purview of the legislation. *San Remo Hotel L.P. v. City of San Francisco*, 27 Cal. 4th 643, 645 (2002); *see also Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 570 (N.D. Cal. 2019) (holding the plaintiff's unconstitutional exaction claim failed as a matter of law because it was generally applicable legislation); *Better Housing for Long Beach*, 452 F. Supp. 3d at 933 (positing that for "general land use regulations," the appropriate test is a *Penn Central* regulatory takings analysis, rather than *Nollan*/*Dolan* scrutiny).

Plaintiffs do not allege or argue that amending the County's General Plan or zoning ordinance is a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978), or a facial challenge to either. (Doc. No. 41 at 9.) Rather, Plaintiffs assert its takings claims are adjudicative decisions based on Defendants' denial

of the Project solely because Village Communities refused to secure fifty offsite roadway fuel modification easements. (*Id.* at 8.) The Court agrees.

Plaintiffs' takings claims are not predicated on legislative determinations classifying an entire area of the County or on the County's decision not to amend the General Plan or zoning ordinance. Rather, Defendants made an adjudicatory decision to condition only Plaintiffs' development application with an easement condition. Moreover, the proposed development application did not involve a countywide general plan amendment or a zoning ordinance generally applicable to the entire county area. As such, the Court finds there was no legislative act which would preclude a takings claim under *Nollan*/*Dolan*.

### 2. The Board's Denial of the Project

Defendants further argue that because the Board allegedly denied the Project for multiple reasons independent of the easement condition, no taking occurred. (Doc. No. 36-1 at 18–19.) Specifically, Defendants assert the Board denied the Project because the majority of the Supervisors (1) were not going to disregard the public vote to reject the proposed Project just four years prior, and (2) found the proposed Project inconsistent with General Plan Policy H-2.1. (*Id.* at 19.) After insufficient briefing by both parties, the Court ordered supplemental briefing and requested Defendants and Plaintiffs to address whether Defendants had the ability to exercise their police power to deny the Project altogether. (Doc. No. 52.)

In *Nollan*, the Supreme Court agreed with the Government's position that "a permit condition that serves the same legitimate police-power purpose as a refusal to issue the permit should not be found to be a taking if the refusal to issue the permit would not constitute a taking." 483 U.S. at 836. Thus, the Court held, if the Government "could have exercised its police power . . . to forbid construction of the house altogether, imposition of the condition would also be constitutional." *Id.* However, "unless the permit condition serves the same governmental purpose as the development ban, the [condition] is not a valid regulation of land use but 'an out-and-out plan of extortion.'" *Id.* at 837.

///

Defendants point to the June 24, 2020 County of San Diego Board of Supervisors meeting minutes, where Supervisor Dianne Jacob discussed these various concerns, including that the public vote "was soundly defeated by the public in 2016. Sixty-four percent of the voters rejected the project." (Doc. No. 36-4 at 241.) Supervisor Jacob went on further to state the "[c]urrent project still grossly violates the county general plan, 1,746 homes versus 110 that would be allowed to our general plan." (*Id.*) Defendants rely on *Nollan*, asserting "[a] refusal to approve the proposed Project for reasons independent of the easement condition is not a taking." (Doc. No. 36-1 at 19 (citing *Nollan*, 483 U.S. at 836).) However, Supervisor Jacob acknowledged the motion pending before the Board "was only on the easement issue and the fuel modification along West Lilac Road." (Doc. No. 36-4 at 239–40.) Additionally, Resolution No. 20-078 ("A Resolution of the San Diego County Board of Supervisors Denying General Plan Amendment (GPA)") specifically outlines Plaintiffs' failure to obtain offsite easements as the basis for the Board's denial of the Project. (Doc. No. 37-7 at 195–99.) As such, while the Supervisors of the Board may have had additional independent reasons for denying the Project, Plaintiffs' failure to acquire offsite easements was the basis for the motion denying Project approval.

In their supplemental briefing, Defendants additionally contend they had the police power to deny the Project because (1) state planning and zoning laws expressly gave the Board the power to deny the Project; (2) the California Environmental Quality Act ("CEQA") gave Defendants the authority to deny the Project; and (3) they lawfully exercised their discretion to deny the Project for reasons other than the easement condition. (Doc. No. 52 at 2–10.) However, the Supreme Court has "repeatedly rejected the argument that if the government need not confer a benefit at all, it can withhold the benefit because someone refuses to give up constitutional rights." *Koontz*, 570 U.S. at 608. Although Defendants are correct they had the authority to deny the Project on grounds unrelated to the easement condition, the County explicitly conditioned approval of the Project on Plaintiffs' acquisition of offsite easements. As such, "[e]ven if [Defendants] would have been entirely within its rights in denying the permit for some other reason, that greater

authority does not imply a lesser power to condition permit approval on petitioner's forfeiture of his constitutional rights." *Id.*

### 3. Transfer of Property Interest

Next, Defendants assert there is no unconstitutional taking because the County did not require Plaintiffs to give up any property, either in the form of an easement or money. (Doc. No. 36-1 at 19–21.) Specifically, Defendants argue County Fire did not demand Plaintiffs to set aside any portion of the Project site or otherwise give up any portion of the Project site to the County. (*Id.* at 20.) Moreover, despite Plaintiffs' speculation that they "would need to pay exorbitant amounts of money to obtain the easements," Defendants neither required this, nor did Plaintiffs ask a single West Lilac property owner for an easement. (*Id.*) Thus, no property owner demanded money in exchange for an easement. (*Id.*) Plaintiffs counter that some property owners would want money for an easement, and that the fifty property owners "could extract $50,000 for each easement, or $2.5 million total, or 'higher.'" (Doc. No. 43 at 10.)

The Fifth Amendment prohibits the government from taking private property for public use without just compensation. Additionally, "[u]nder the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan*, 512 U.S. at 385. "In evaluating [a plaintiff's claim, the Court] must first determine whether the 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the [government entity]." *Id.* at 386 (quoting *Nollan*, 483 U.S. at 937). The Supreme Court described this "essential nexus" as a "rough proportionality" between the exaction demanded by the government entity and the "nature and extent to the impact of the proposed development." *Id.* at 391.

In the land-use context, "a special application of [the unconstitutional conditions] doctrine . . . protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits." *Koontz*, 570 U.S. at 604

(citations and internal quotation marks omitted). In *Nollan*, for example, the Supreme Court held that a state agency could not, without paying just compensation, require the owners of beachfront property to grant a public easement over their property as a condition for obtaining a building permit. 483 U.S. at 831–42; *see also Dolan*, 512 U.S. at 379–80, 394–95 (concluding that a taking occurred when a city required a landowner to dedicate a portion of her real property to a greenway that would include a bike and pedestrian path for public use). Because of the typically broad powers wielded by permitting officials, landowners who seek governmental authorization to develop their properties "are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits." *Koontz*, 570 U.S. at 605. "Extortionate demands" made by permitting authorities can "frustrate the Fifth Amendment right to just compensation, and the unconstitutional conditions doctrine prohibits them." *Id.*; *see Dolan*, 512 U.S. at 396.

Here, the Court finds neither party has adequately provided evidence of whether Plaintiffs were required to give up property in the form of money. Kenneth Keagy, a state-licensed and certified general real estate appraiser, estimated that an easement along West Lilac would cost $3,000 or less for twelve of the forty-eight parcels, while the remaining thirty-six parcels would likely range from about $4,000 to $65,000 per parcel, averaging about $22,000 per parcel. (Declaration of Kenneth Keagy, Doc. No. 37-9, ¶ 7.) However, despite this appraisal, Plaintiffs fail to offer evidence that any property owners along West Lilac would indeed demand money in exchange for an easement. Likewise, Defendants fail to offer any evidence that Plaintiffs would *not* be required to pay money in exchange for easements along West Lilac. As such, the Court **DENIES** both Plaintiffs' and Defendants' motions for summary judgment as to Plaintiffs' takings claims, and declines to engage in determining whether there was a nexus and rough proportionality.

**B.    Plaintiffs' Substantive Due Process Claim (Claim Four)**

Plaintiffs next argue Defendants violated their rights under the Due Process Clause of the Fourteenth Amendment by arbitrarily and unreasonably denying their development application. (SAC ¶¶ 124–28.) Specifically, Plaintiffs assert the easement condition

imposed by Defendants lacks any relationship to the public health, safety, or general welfare, and thus violated Plaintiffs' substantive due process rights. (Doc. No. 37-1 at 32.) Defendants respond that Plaintiffs' substantive due process claim fails because they do not have a protected property interest, and that even if they did, the easement condition had a rational relationship to the County's legitimate interest in ensuring the Project did not create an undue risk of entrapment to nearby residents during a wildfire evacuation. (Doc. No. 36-1 at 25–26.) Although the Parties again raise this argument in their supplemental briefings (*see* Doc. Nos. 53 at 18; 54 at 13), it is outside the scope of what the Court previously ordered. (*See* Doc. No. 52.) Thus, the Court does not consider these arguments.

"To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). However, "[t]he Supreme Court has 'long-eschewed . . . heightened [means-ends] scrutiny when addressing substantive due process challenges to government regulation' that does not impinge on fundamental rights." *Id.* (quoting *Lingle*, 544 U.S. at 542). As such, "the irreducible minimum of a substantive due process claim challenging land use action is failure to advance any legitimate governmental purpose." *Id.* (internal quotation marks and citation omitted); *Matsuda v. City and Cty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008) ("[S]tate action which neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process only if the action is not rationally related to a legitimate governmental purpose.") (internal quotation marks omitted). The Ninth Circuit has described a plaintiff's burden on such a claim as "exceedingly high." *Shanks*, 540 F.3d at 1088. Moreover, "there is a due process claim where a 'land use action lacks any substantial relation to the public health, safety, or general welfare.'" *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008) (quoting *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007)).

Here, Plaintiffs' substantive due process claim is not premised on an allegation that the County's actions impinged on their fundamental rights. Rather, Plaintiffs contend the

County used its ability to impose a conditional use permit on the Project as a pretext to effectuate a private taking. As previously discussed above, to maintain a substantive due process claim for a private taking, "a plaintiff must allege: (1) the government's action was "arbitrary, irrational, or lacking any reasonable justification in the service of a legitimate government interest"; and (2) the government's actions deprived them of a protected property interest. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 962 (9th Cir. 2011) *overruled on other grounds by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019).

Next, "[i]f it is 'at least fairly debatable' that the decision to [require the acquisition of easements] was rationally related to legitimate government interests, the[n] [Defendants' action] 'must be upheld.'" *Christensen v. Yolo Cnty. Bd. of Sup'rs*, 995 F.2d 161, 165 (9th Cir. 1993) (quoting *Nelson v. City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989)).

Defendants present extensive evidence indicating they acted in good faith in an effort to advance legitimate governmental interests—namely, that they were concerned with the safety of persons evacuating on West Lilac Road during a wildfire, and that they required the easement condition to address wildfire evacuation concerns. For example, Defendants have offered sufficient evidence that due to substantial fuel along West Lilac Road, a main area evacuation route, these areas would pose a significant risk of entrapping those in the area during a wildfire evacuation, were the Project to be implemented. (Doc. No. 36-1 at 22–23; Declaration of Anthony Mecham ("Mecham Decl."), Doc. No. 36-8, ¶¶ 12–15; Doc. No. 36-3 at 262, 265, 405–409.) Specifically, there are currently approximately eighty-one residences located along West Lilac Road. (Doc. Nos. 36-1 at 22–23, 36-3 at 265.) However, the Project proposes to add approximately 5,000 residents and over 3,000 vehicles to the area, not including those staying at the proposed hotel or senior care center, or visiting the retail and commercial area, which creates a risk of entrapment along West Lilac Road during a wildfire evacuation. (*Id.*) Moreover, County Fire determined that before supporting the Project, vegetation management on West Lilac Road was necessary to make the Project safe for current and future residents because the addition of over 3,000

cars to the area from the Project would cause substantial traffic congestion on West Lilac Road during a wildfire evacuation, which, coupled with the presence of brush along West Lilac, would present a risk of people becoming entrapped in their vehicles during an evacuation. (Doc. No. 36-1 at 10.)

Under *Koontz*, *Nollan*, and *Dolan*, "the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development," so long as it does "not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts." *Koontz*, 570 U.S. at 605.

Plaintiffs' contention that the County's fire risk concerns were not legitimate merely because the County's evacuation time analysis differed from that of Plaintiffs' and failed to consider Plaintiffs' alternative proposals to the easement condition do no more than present the type of "'run of the mill dispute between a developer and a town planning agency' that fails to implicate concerns about due process deprivations." *Teresi Invs. III v. City of Mountain View*, 609 Fed. Appx. 928, 930 (9th Cir. 2015); *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir. 1982); *Stubblefield Constr. Co. v. City of San Bernardino*, 32 Cal. App. 4th 687, 711–12 (1995). Plaintiffs have not met the "exceedingly high burden" required to show the Board or the County behaved in a constitutionally arbitrary fashion, *Matsuda*, 512 F.3d at 1156, nor have they established that Defendants' easement requirement, or the denial of the Project, was arbitrary and capricious. Rather, Defendants' decision was rationally based on the perceived undue risk of entrapment to nearby residents during a wildfire evacuation. Plaintiffs have not presented evidence adequate to permit a reasonable fact finder to decide that the County's motivations for requiring the easement condition did not include any legitimate concern for public safety. Indeed, the evidence shows the County was motivated in substantial part by safety concerns. Accordingly, the decision to require Plaintiffs to acquire easements did not violate their due process rights. *See Teresi Invs. III*, 609 Fed. Appx. at 930.

///

15

20-cv-01896-AJB-DEB

Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment and **GRANTS** summary judgment in favor of Defendants as to the fourth claim for relief in the SAC based upon Plaintiffs' assertion of violation of substantial due process under the Fourteenth Amendment.

### C.      Plaintiffs' Equal Protection Claim (Claim Three)

Plaintiffs further assert Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment by imposing a condition for development on Plaintiffs that Defendants did not impose on other, similarly situated development proposals during the same period. (SAC ¶ 120.)

The Equal Protection Clause of the Fourteenth Amendment provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' action." *N. Pacifica LLC*, 526 F.3d at 486 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). To succeed on this kind of "class of one" equal protection claim, Plaintiffs must demonstrate that Defendants "(1) intentionally (2) treated [Plaintiffs] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1021–22 (9th Cir. 2011).

Defendants argue that class-of-one equal protection claims do not arise out of exercises of discretion based on subjective, individualized determinations. (Doc. No. 40 at 31.) In *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012), the Ninth Circuit stated "[t]he class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008)). The Ninth Circuit further noted in *Towery* that the class-of-one theory is inapplicable only "[a]bsent any pattern of generally exercising the discretion in a particular manner while treating one individual differently *and* detrimentally." *Id.* at 660–61 (emphasis in original); *see Prime Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096, 1117 (S.D. Cal. 2016).

In *Las Lomas Land Co. v. City of Los Angeles*, 177 Cal. App. 4th 837 (2009), the California Court of Appeal held the class of one equal protection theory was inapplicable to the city's decision to deny approval of the plaintiff's proposed development project, which "presented complex urban planning and land use issues." *Id.* at 860. The California Court of Appeal explained: "The decision whether to approve a project of this sort ordinarily would involve numerous public policy considerations and the exercise of discretion based on a subjective, individualized determination." *Id.*

Here, like the city's decision in *Las Lomas Land Co.* to deny approval of the plaintiff's proposed development project, the County's decision on this case involved "numerous public policy considerations and the exercise of discretion based on [the] subjective, individualized determination[s]." 177 Cal. App. 4th at 860. The San Diego County Board of Supervisors based their decision on the Environmental Impact Report, reviewed and considered by the Planning Commission, and County Fire's recommendations. (Doc. No. 37-7 at 195.) Additionally, the Board noted the Project was inconsistent with the General Plan and would not minimize the population exposed to wildfire hazards. (*Id.* at 196.) The Board ultimately rejected Plaintiffs' project after it explicitly found "the Project has not implemented measures that reduce the risk of structural and human loss due to wildfire and is inconsistent with [the] General Plan Policy[.]" (*Id.* at 196–97.) As such, the Court finds the class-of-one doctrine is inapplicable here.

Defendants further contend that even if a class-of-one equal protection claim did apply, Plaintiffs cannot prove the second and third elements of their claim. (*Id.*) Specifically, they argue Plaintiffs cannot prove the County treated Plaintiffs differently than other similarly situated property owners, or that the County lacked a rational basis for the easement condition. (*Id.*)

Here, there is a genuine issue as to a material fact regarding whether Plaintiffs were treated differently than other similarly situated developers. Plaintiffs have identified other allegedly similarly situated development projects (Valiano, Harmony Grove Village South,

Newland Sierra, Village 14, and Village 13), to which Howard Windsor, Plaintiffs' fire protection consultant, opined the Project had a lesser proportion of their land in "County Fire Hazard Severity Zones" as compared to allegedly similar projects. (Doc. No. 41-3 at 38.) However, as noted by Defendants, Plaintiffs admit each GPA is unique, and that no two GPA project is the same. (Declaration of Mark Slovick, Doc. No. 36-6, ¶ 3; Deposition of Jon Rilling, Doc. No. 40-12 at 398–99.) Defendants contend the County analyzed the Project using the same process it uses on every General Plan Amendment ("GPA") project, and that because each GPA project is unique, there are no similarly situated property owners. (Doc. No. 40 at 31.) Additionally, Defendants assert there are no other GPA projects that have the same fire and evacuation issues, "such as a nearby canyon with substantial fuels and locations of uninterrupted fuels from that canyon to a main evacuation route." (*Id.*)

However, because Defendants have shown the easement condition is rationally related to the County's legitimate interest in wildfire evacuation safety, as discussed above, the Court **DENIES** Plaintiffs' motion for summary judgment and **GRANTS** Defendants' motion for summary judgment as to the third claim for relief in the SAC.

## VI.   CONCLUSION

For all the reasons stated, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 1, 2022

Hon. Anthony J. Battaglia
United States District Judge