UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILLAGE COMMUNITIES, LLC, et al., Plaintiffs, v. COUNTY OF SAN DIEGO; BOARD OF SUPERVISORS OF COUNTY OF SAN DIEGO; and DOES 1–20, Defendants. | Case No.: 20-cv-01896-AJB-DEB **ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION** |

Presently pending before the Court is Defendant's motion for reconsideration, which Defendants requested leave to file and which the Court granted during the Pretrial Conference held on October 20, 2022. (Doc. No. 75.) This motion is suitable for determination on the papers and without oral argument in accordance with Local Civil Rule 7.1.d.1. Accordingly, the Court hereby **VACATES** the Pretrial Conference currently set for **January 19, 2023 at 2:00 p.m.** For the reasons provided in detail below, the Court **DENIES** Defendants' motion for reconsideration.

## I.    BACKGROUND

Village Communities, LLC is a real estate development entity that owns approximately 608 acres of land in an unincorporated area of San Diego County, California

1

(the "Property"). (Second Amended Complaint ("SAC"), Doc. No. 27, ¶ 1.) The Property is located east of Interstate 15 and south of West Lilac Road, approximately ten miles north of the City of Escondido. (*Id.* ¶¶ 27–28.) Village Communities purchased the Property in 2017 from Accretive Investments, the former developer, and thus became the owner and project applicant. (*Id.* ¶ 30.) Village Communities and its predecessor proposed to build a housing and mixed-use community on this site, entitled Lilac Hills Ranch (the "Project"). (*Id.* ¶ 27) Specifically, the Project proposed 1,746 homes, a town center with a fifty-room inn and commercial, retail, and office spaces, a K–8 school, and a senior community center, among other uses. (*Id.* ¶ 33.)

In 2010, the County granted Accretive the "Plan Amendment Authorization" for Lilac Hills Ranch. (Doc. No. 37-1 at 10.) In 2012, Accretive submitted its development application to the County, and the Project underwent environmental and public review between May 2012 and 2015. (*Id.*) In September 2015, the San Diego County Planning Commission voted to recommend Environmental Impact Review certification and project approval to the Board, subject to modifications. (*Id.* at 11.) However, later that year, the California Supreme Court issued a decision affecting the 2015 Project's greenhouse gas emissions analysis, which paused movement on the project. (*Id.*)

In 2016, Accretive placed a modified version of the 2015 Project on the ballot as a voter initiative, but it was rejected by 64% of county voters. (*Id.*; Doc. No. 36-1 at 5.) In 2017, Village Communities overtook the Project and resumed processing the application. (Doc. No. 37-1 at 12.) After acquiring the Property, Village Communities revised the proposed project, working with Defendants' Planning Department staff to address various concerns. (*Id.*) Nonetheless, on June 20, 2020, the Board formally voted to deny the project, and Plaintiffs filed suit. (*Id.* at 26.)

This case ultimately concerns wildfire safety, as the Property sought to be developed is in a high-risk area for such disasters. Plaintiffs assert that through its work with Planning Department staff, it revised the Project to mitigate the risk down to acceptable levels consistent with the County's General Plan, a master zoning document that governs all

future development within the County's boundaries. Despite these revisions, Plaintiffs allege Defendants denied the permit only after Village Communities refused to meet an alleged unconstitutional condition—namely, acquiring "fuel modification easements" from fifty adjacent landowners.

A fuel modification easement grants the easement holder the right to enter property and control vegetation on the portion of the property subject to the easement. In the context of wildfires, the permitted entry typically involves destroying and removing vegetation that serves as "fuel" for fires, which can help stop a fire's spread across a roadway. Here, the main road leading to and from the Project site is a two-lane road called West Lilac Road, which is surrounded to the north and east by an area called Keys Canyon that is characterized by large, dense, flammable brush. (Doc. No. 36-1 at 9.) Particularly of concern, the County Fire Authority ("County Fire") found that the addition of over 3,000 cars from the Project residents, plus additional vehicles from people traveling to and from the Project, would cause substantial traffic congestion on West Lilac during a wildfire evacuation, presenting a risk of people becoming entrapped in their vehicles during an evacuation. (*Id.* at 10.) Thus, Defendants allegedly required Village Communities to obtain these easements from the individual property owners as a condition for approving the development.

Plaintiffs contend Defendants unconstitutionally required Plaintiffs to obtain the easements because (1) the County already had the legal authority the easements supposedly convey, (2) other similar projects have not been subject to the same requirement, and (3) Defendants' actions were arbitrary and capricious. Plaintiffs assert four claims for relief, each alleging violations of 42 U.S.C § 1983.

On July 1, 2022, this Court denied Plaintiffs' motion for summary judgment and granted in part and denied in part Defendants' motion for summary judgment, or in the alternative, partial summary judgment ("July 1 Order"). (Doc. No. 55.) Relevant to this memorandum, in the July 1 Order, this Court held there was no legislative act which would preclude Plaintiffs' takings claim under *Nollan/Dolan*. (*Id.* at 9.) As to Defendants' second

defense, the Court held that "while the Supervisors of the Board may have had additional independent reasons for denying the Project, Plaintiffs' failure to acquire offsite easements was the basis for the motion denying Project approval." (*Id.* at 10.) Thus, the Court held that Project denial was not for reasons independent of the easement condition, as discussed further below.

During the October 20, 2022 pretrial conference, Defendants requested the Court to reconsider denial of summary judgment and again raised these two defenses of (1) project denial for independent reasons, and (2) the existence of a legislative action, and requested further supplemental briefing on these issues, which the Court granted. The parties submitted their supplemental briefs, (Doc. Nos. 75, 77), and this order follows.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides that, after entry of judgment, a court may alter or amend the judgment. "[T]he district court enjoys considerable discretion in granting or denying [a Rule 59(e)] motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam)). However, because "the rule offers an extraordinary remedy, [it should] be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation and internal quotation marks omitted). As such, a Rule 59(e) motion generally should not be granted absent highly unusual circumstances, *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999), such as an intervening change in controlling law, the availability of newly discovered or previously unavailable evidence, or the need to correct a clear error or prevent a manifest injustice, *Allstate Ins. Co.*, 634 F.3d at 1111; *see also McDowell*, 197 F.3d at 1255 n.4 (finding no abuse of discretion "merely because the underlying order is erroneous, rather than clearly erroneous").

## III.   DISCUSSION

Relevant to this motion, Plaintiffs' first and second claims allege violations of their rights under the Fifth Amendment's Takings Clause through (1) inverse condemnation and

(2) a temporary taking, on the grounds that the County's request for offsite fuel modifications is an unconstitutional condition. (SAC ¶¶ 107–117.)

In their supplemental briefing, Defendants argue (1) the Board denied the Project for additional reasons independent of the easement condition, and thus Plaintiffs cannot prove causation; and (2) the Board's rejection of the Project was a legislative action that is not subject to an unconstitutional conditions claim. (Doc. No. 75.)

## A.   Motion for Reconsideration

As a preliminary matter, Defendants fail to address the legal standard for motions for reconsideration, and do not provide a basis for reconsideration, such as an intervening change in controlling law, the availability of newly discovered or previously unavailable evidence, or the need to correct a clear error or prevent a manifest injustice. *Allstate Ins. Co.*, 634 F.3d at 1111. Additionally, Defendants fail to show "what new facts or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1.i.l. Rather, Defendants merely state that denial of a summary judgment motion is an interlocutory order and thus has the inherent procedural power to reconsider, rescind, or modify the order. (Doc. No. 75 at 5.) Defendants further state they "do not believe that the Court's ruling *denying* both parties summary judgment on Plaintiffs' takings claim definitely ruled against Defendants on defenses two and three, but to the extent the Court believes it did so, the Court has the power to revisit those rulings." (*Id.*)

Defendants also fail to address Civil Local Rule 7.1.i.2's requirement that a motion for reconsideration "be filed within twenty-eight (28) days after the entry of the ruling, order, or judgment sought to be reconsidered." Twenty-eight days from the Court's July 1 Order was July 29, 2022. However, rather than filing a motion for reconsideration within the appropriate time, Defendants requested supplemental briefing on these issues during the pretrial conference on October 20, 2022. Defendants have not raised any additional basis for asking the Court to reconsider its holdings from the July 1 Order.

///

**B.     Defense 2: Whether the Project Denial Was for Independent Reasons**

As in its motion for summary judgment, Defendants argue that because the Board allegedly denied the Project for multiple reasons independent of the easement condition, no taking occurred. (Doc. No. 75 at 5–10.) Specifically, Defendants assert the Board denied the Project because the majority of the Supervisors (1) were not going to disregard the public vote to reject the proposed Project just four years prior, and (2) found the proposed Project inconsistent with General Plan Policy H-2.1. (*Id.* at 5–6.) In support, Defendants point to the June 24, 2020 County of San Diego Board of Supervisors Statement of Proceedings and Minute Order, which "[f]ound that th[e] project is inconsistent with General Plan Policy H-2.1, "Development that Respects Community Character." (Doc. No. 36-4 at 18, 45.) Thus, assert Defendants, the "Statement of Proceedings confirm that the Board's denial was independently based on General Plan Policy H-2.1." (Doc. No. 75 at 7.) However, both documents state Resolution No. 20-078 was *also* adopted by the Board. (Doc. No. 36-4 at 18, 45.) The adopted resolution was Resolution No. 20-078, "A Resolution of the San Diego County Board of Supervisors Denying General Plan Amendment (GPA) . . . , Zoning Reclassification . . . , Specific Plan . . . , Master Tentative Map . . . , Implementing Tentative Map . . . , Major Use Permit . . . , and Site Plan . . ." which states the Project was inconsistent with the General Plan "based on these significant unresolved fire safety concerns . . . ." (*Id.* at 49.) In the body of the Resolution, Plaintiffs' failure to obtain the offsite easements is discussed extensively. (*See id.* at 48–50.)

At the June 24, 2020 County of San Diego Board of Supervisors Meeting, the relevant item on the agenda was for "Recommended denial of Lilac Hills Ranch general plan amendment, specific plan, zone reclassification, tentative maps, major use permit, and site plan, located in the Valley Center and Bonsall Community Plan Areas." (*Id.* at 7.) At this meeting, after Cal Fire San Diego Unit Chief Tony Mecham recommended denial of the Project due to Plaintiffs' failure to acquire the easements, Supervisor Desmond made a "motion to refer the project back to staff for further analysis and allow the applicant additional time to try to resolve fire-related issues . . . ." (*Id.* at 226.) Thereafter, Supervisor

Jacob made a substitute motion "for the staff recommendations which would be to deny the Project. There are two recommendations. The first one is regarding CEQA, *and the second recommendation is to adopt the resolution*." (*Id.* at 248.) This motion was seconded by Supervisor Fletcher, who then stated he "would just add to the staff recommendation . . . to find that the project is inconsistent with the general plan Policy H-2.1, development that respects community character." (*Id.*) However, there was no second to Supervisor Fletcher's add-on/amendment. (*See id.* at 243–46.) Thereafter, Supervisor Jacob's motion was restated by the clerk and passed by a majority vote. (*Id.* at 248.)

Defendants assert that because Supervisor Jacob "separately [found] the Project inconsistent with General Plan Policy H-2.1[,]" that denial was not based upon the easement condition. However, Resolution 20-078 was adopted at the meeting *alongside* the finding "that the project is inconsistent with General Plan Policy H-2.1, "Development that Respects Community Character." (*Id.* at 18.) Moreover, as discussed, Supervisor Fletcher's amendment regarding General Plan Policy H-2.1 was not seconded or voted on. Thus, there is a question as to whether the clerk's minutes reflecting that the Project was denied in part due to inconsistency with General Plan Policy H-2.1 was in error.

Moreover, although there may have been additional independent reasons for denying the Project, Plaintiffs' failure to acquire offsite easements remains one basis for the motion denying Project approval, as found in the July 1 Order. Defendants admit "Resolution No. 20-078 is only part of the Board's official actions denying the Project" but argue that *Koontz* is distinguishable because "there was no indication that the defendant water district in *Koontz* denied the permit at issue for reasons other than the plaintiff's failure to pay for improvements to district-owned land." (Doc. No. 75 at 8.) However, Defendants fail to cite any law for the proposition that where *multiple* reasons are on the record for denial of a project, that the alleged unconstitutional condition is no longer a relevant consideration. Indeed, as argued by Plaintiffs', the County's "other reasons" defense is insufficient under the Supreme Court's unconstitutional conditions doctrine. In *Koontz v. St. Johns River Mgmt. Dist.*, 570 U.S. 595 (2013), the Supreme Court noted that "[e]ven if respondent

would have been entirely within its rights in denying the permit for some other reason, that greater authority does not imply a lesser power to condition permit approval on petitioner's forfeiture of his constitutional rights." *Id.* at 608.

Defendants further assert that Plaintiffs' takings claim fails because they cannot prove causation. (Doc. No. 75 at 9.) Specifically, Defendants argue that even without the easement condition, the Project would still have been denied. (*Id.*) Defendants also argue that because Plaintiffs cannot prove but-for causation, they are not entitled to compensatory damages. (*Id.* (citing *Goss v. City of Little Rock*, 151 F.3d 861 (8th Cir. 1998)).) However, these arguments were not raised in Defendants' motion for summary judgment and are outside the scope of supplemental briefing. As such, the Court declines to consider these new arguments.

Based on the foregoing, the Court finds that denial of the Project was not for reasons independent of the easement condition.

## C.   Defense 3: Whether the Board of Supervisors' Rejection of the Project Was a Legislative Action

Next, Defendants assert that because the County could not approve the Project without amending its General Plan or zoning ordinance, the County's decision was a legislative one which does not give rise to a taking. (Doc. No. 75 at 11.) Defendants point to California's longstanding law that "[a]dopting or amending a general plan is a quintessential legislative act[,]" as opposed to adjudicative or administrative. *Molloy v. Vu*, 42 Cal. App. 5th 746, 758 (2019). Indeed, "the amendment of a legislative act is itself a legislative act and the amendment of a general plan is thus a legislative act . . . ." *Yost v. Thomas*, 36 Cal. 3d 561, 570 (1984) (internal quotation marks and citations omitted). "Similarly, the rezoning of land is a legislative act . . . ." *Id.* "California precedent has settled the principle that zoning ordinances, whatever the size of parcel affected, are legislative acts." *Arnel Dev. Co. v. City of Costa Mesa*, 28 Cal. 3d 511, 514 (1980).

Courts recognize that "adjudicative" zoning decisions are typically *ad hoc*, characterized by the exercise of discretion by the city or administrative body. Legislative

actions, on the other hand, are characterized by "generally applicable legislation . . . that []
applie[s], without discretion or discrimination," to every property within the purview of
the legislation. *San Remo Hotel L.P. v. City of San Francisco*, 27 Cal. 4th 643, 645 (2002);
*see also Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 570 (N.D. Cal. 2019) (holding
the plaintiff's unconstitutional exaction claim failed as a matter of law because it was
generally applicable legislation); *Better Housing for Long Beach*, 452 F. Supp. 3d at 933
(positing that for "general land use regulations," the appropriate test is a *Penn Central*
regulatory takings analysis, rather than *Nollan*/*Dolan* scrutiny).

Plaintiffs' permit application filed with the County in January 2018 consisted of: (1)
a General Plan Amendment; (2) Specific Plan; (3) Rezone; (4) two Tentative Maps
subdividing the parcels; (5) Major Use Permit to operate project wastewater facilities; and
(6) Site Plan for Project parks. (Doc. No. 77 at 19.) Plaintiffs first respond that their permit
application was to be heard concurrently as a whole as one application and decided at one
public hearing and in one final decision, and the application was specific and limited to the
Lilac Hills Ranch Project. (*Id.*) During the pretrial conference and in their supplemental
briefing, Defendants rely upon *Arnel Development Co.*, which stood fast to the California
precedent that "zoning ordinances, whatever the size of parcel affected, are legislative
acts," 28 Cal. 3d at 514, and thus the *Nollan*/*Dolan* unconstitutional conditions claim does
not apply. (Doc. No. 75 at 15.)

Plaintiffs respond that "[c]ourts treat a government action that consists of a mix of
legislative and adjudicatory decisions as adjudicatory." (*Id.* (citing *Mountain Defense
League v. Board of Supervisors*, 65 Cal. App. 3d 723, 729 (1977) ("Where . . . an agency
in two capacities is simultaneously disposing of two legally required functions with but
one decision, review of that determination must be by the more stringent standard.").)
Plaintiffs specifically assert that the Project's final map stage is an adjudicatory action
arising under California's Subdivision Map Act. (*Id.* at 20.) Plaintiffs are correct that the
"approval of a tentative subdivision map by a local agency is an *adjudicatory*
administrative decision." *Griffis v. Cnty. of Mono*, 163 Cal. App. 3d 414, 426 (1985)

9

(emphasis added). "The reason the decision is adjudicatory in nature is that it represents the application of general standards to specific parcels of real property; the decision is therefore determined by facts peculiar to the individual case." *Id.* at 426–27; *see also Linborg-Dahl Investors, Inc. v. City of Garden Grove*, 179 Cal. App. 3d 956, 961 (1986) (applying legal standard for adjudicatory decisions in considering city council's decision to deny site plan application).

Moreover, "where the government makes an adjudicative decision to condition an application for a building permit on an individual parcel[,]" the burden shifts to the government to show its condition is roughly proportional to the burden placed on the permit applicant. *Garneau v. City of Seattle*, 147 F.3d 802, 811 (9th Cir. 1998). In *Dolan*, the Supreme Court highlighted that the "the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel," instead of imposing an "essentially legislative determination[] classifying entire areas of the city . . . ." 512 U.S. at 385; *see also Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 546 (2005) ("Both *Nollan* and *Dolan* involved Fifth Amendment takings challenges to adjudicative land-use exactions."); *Better Housing for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 932 (C.D. Cal. 2020) (same). Courts within the Ninth Circuit have since interpreted *Koontz*, noting that "the Ninth Circuit and the California Supreme Court have expressly stated that a development condition need only meet the requirements of *Nollan* and *Dolan* if that condition is imposed as an 'individual, adjudicative decision.'" *Bldg. Indus. Ass'n—Bay Area v. City of Oakland*, 289 F. Supp. 3d 1056, 1058 (N.D. Cal. 2018); *see Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 571–72 (N.D. Cal. 2019) (adopting analysis of *Building Industry Association*). Thus, the "sine qua non" for application of *Nollan*/*Dolan* scrutiny is the "discretionary deployment of the police power" in "the imposition of land-use conditions in individual cases." *Ehrlich*, 12 Cal. 4th at 869.

Here, Defendants utilized their discretion to impose an easement condition in Plaintiffs' individual case. Thus, because Plaintiffs' takings claims are predicated on a combination of adjudicative and legislative determinations, and because Defendants "made

an adjudicative decision to condition [Plaintiffs'] application for a building permit on an individual parcel," the Court finds Defendants' acts amounted to an adjudicative decision under which *Nollan* and *Dolan* would apply.

### D. Remaining Issues

Defendants newly assert that denial of the Project defeats Plaintiffs' takings claim altogether and thus should be dismissed. (Doc. No. 75 at 8.) However, this argument is outside the scope of the Court's requested supplemental briefing and was not raised in Defendant's motion for summary judgment. (*See generally* Doc. No. 36-1.) As such, the Court declines to address this argument.

### E. Length of Trial

Lastly, Defendants assert that precluding these two defenses will not reduce the length of the trial. (Doc. No. 75 at 18.) Specifically, Defendants argue Plaintiffs claimed that trial would take 16 days before the issue of allowing these defenses arose. (*Id.*) Thereafter, Plaintiffs revised their trial estimate down despite Defendants' intention to present these defenses. (*Id.*) Moreover, Defendants argue the time it would take to present the evidence on these two defenses is minimal. (*Id.*) Plaintiffs respond that the County's two defenses will prolong the trial because "virtually every County deponent testified extensively on precisely [these] two issues" and there are "numerous exhibits that address these two defenses/issues." (Doc. No. 77 at 23.) As such, Plaintiffs assert that "[e]limination of such defenses will . . . ensure that the parties' counsel are able to try this case in the time allotted by the Court." (*Id.* at 24.)

As a matter of law, the Court has ruled on the issue of these two defenses and finds it unnecessary to waste the jury's time with adjudicated matters. Therefore, the Court declines to extend the length of trial. Based on the Final Pretrial Conference Order, the Court will set time limits for the trial.

///

///

///

11

## IV.   CONCLUSION

For all the reasons stated, the Court **DENIES** Defendants' motion for reconsideration. The Court moves the Pretrial Conference to **February 2, 2023 at 2:00 p.m.** and confirms the Motion in Limine Hearing remains set for **April 20, 2023 at 2:00 p.m.** The jury trial for this case remains set for **May 2, 2023 at 8:30 a.m.** The Court further **ORDERS** the parties to:

- File a Proposed Pretrial Conference Order in compliance with Local Rule 16 and consistent with the Court's rulings by **January 26, 2023**; and

- Contact the Magistrate Judge for a Mandatory Settlement Conference forthwith.

**IT IS SO ORDERED.**

Dated:  January 11, 2023

Hon. Anthony J. Battaglia
United States District Judge

20-cv-01896-AJB-DEB